**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**DOMINION COVE POINT LNG, L.P.**

**Plaintiff,**

**v.**

**.1016 ACRES OF LAND MORE OR LESS IN CHARLES COUNTY, MARYLAND, *et al.*,**

**Defendants.**

**Civil Action No. AW-06-2449**

**MEMORANDUM OPINION**

Dominion Cove Point LNG, L.P., ("Plaintiff"), is a natural gas company seeking condemnation of easements in order to construct a natural gas pipeline. Defendant[1] is the owner of the property Plaintiff seeks to condemn. Plaintiff filed a Motion for Partial Summary Judgment and for Possession of Easements (Paper No. 27). Bruce M. Swinford,[2] on behalf of his mother, Defendant Louise Swineford,[3] filed an Opposition (Paper No. 30). Plaintiff filed its Reply (Paper No. 31) and then an Amended Reply (Paper No. 32). Mr. Swinford, on behalf of Defendant Louise Swineford, filed Correspondence[4] in surreply (Paper No. 33). No hearing is

[1] There are two named Defendants: (a) .1016 Acres of Land More or Less in Charles County, Maryland and (b) Louise Swineford.

[2] Bruce M. Swinford is a Defendant in a companion case, *Dominion Cove Point LNG, L.P. v. 2.0777 Acres of Land More or Less in Charles County, Maryland, et al.*, PJM-06-CV-2447.

[3] Defendant Swineford is not represented by counsel in this litigation.

[4] This correspondence, addressed to Judge Williams and Judge Connelly, is dated August 30, 2007. This correspondence was submitted in response to Plaintiff's Reply of August 21, 2007 (Paper No. 31). The Court finds this correspondence is equivalent to a surreply. Local Rule 105.2 states, in pertinent part, "Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Mr. Swinford did not seek leave of court to file his "correspondence." Considering that Defendant Swineford is pro se, and her son, who filed the correspondence on

deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Plaintiff's Motion for Partial Summary Judgment and for Possession of Easements will be granted.

**BACKGROUND**

The following facts are either undisputed or are construed in the light most favorable to Defendant.[5] Plaintiff is an interstate natural gas company as defined by § 2(a) of the Natural Gas Act, 15 U.S.C. § 717 *et seq.* As such, Plaintiff is qualified to construct, own, operate and maintain pipelines to transmit natural gas and its by-products. Defendant Louise Swineford is the record owner of real property consisting of 44.29 acres, more or less, in the Sixth Election District of Charles County, Maryland. The property is described in a deed dated July 3, 1980 and recorded in the land records of Charles County, Maryland, in Liber 726, Page 120. This property is further identified as follows: Tax Account ID 09-06-112684, Map 14, Grid 3, Parcel 210.[6]

Plaintiff owns a liquefied natural gas ("LNG") import facility located in Lusby, Maryland (the "Cove Point LNG Facility"). Plaintiff also operates a natural gas pipeline extending from the Cove Point LNG Facility to Marshall Hall in Charles County, Maryland, ("the existing pipeline"). Paper No. 27, Ex. 1 (Mordan Decl. ¶ 1).

On April 15, 2005, two Dominion companies, Plaintiff and Dominion Transmission, Inc.

---

her behalf is not an attorney, the Court will consider this correspondence.

[5] *Pro Se* Defendant Louise Swineford did ***not*** file an Answer to the Complaint. *Accord* Paper No. 13 ¶ 6 ("Defendant was served with the Complaint on October 16, 2006, but Defendant has not filed an answer."); *contra* Mem. Supp. Pl.'s Mot. Partial Summ. J. at 3 ("On February 14, 2007, the Owner filed her Answer."). A review of the docket for this litigation shows nothing was filed on February 14, 2007.

[6] The Complaint identified Ralph Swineford and Louise Swineford as the record owners of land. Less than a month later, Plaintiff moved for a voluntary dismissal, without prejudice, as to Defendant Ralph Swineford. *See* Paper No. 4. Ralph Swineford was dismissed as a Defendant on November 8, 2006. *See* Paper No. 6. The Court presumes Ralph Swineford died, leaving Louie Swineford as the *sole* record owner.

("DTI"), filed three separate but related certificate applications with the Federal Energy Regulatory Commission ("FERC"). These three applications collectively comprise the "Cove Point Expansion Project." The purpose of this project "is to allow the importation of LNG and to transport these new, additional, and vital supplies of natural gas to consumers throughout the eastern United States." *Id.*, Ex. 1 (Mordan Decl. ¶ 2).

Of the three FERC applications filed, one concerns the expansion of the Cove Point LNG Facility (FERC Docket No. CP05-130). The Plaintiff's other application concerns approximately 48 miles of 36" diameter natural gas pipeline No. TL-532 extending from the import terminal at Cove Point to Marshall Hall in Charles County, Maryland, on the east side of the Potomac River (FERC Docket No. CP05-132). This pipeline is the subject of the eminent domain proceeding in this case. The third application by DTI has no bearing on this litigation. *Id.*, Ex. 1 (Mordan Decl. ¶¶ 3-4).

After the three applications were extensively reviewed by FERC and numerous federal, state and local agencies, on June 16, 2006, FERC approved the Cove Point Expansion Project by issuing certificates of public convenience and necessity to Plaintiff and DTI. FERC set a deadline of June 15, 2009 for the completion of all construction activities. *Id.*, Ex. 1 (Mordan Decl. ¶ 5).

The pipeline installation project impacts approximately two hundred eighty-five (285) properties in Charles, Calvert and Prince George's Counties, Maryland. Due to inclement weather and Maryland's environmental restrictions, the pipeline construction season is relatively short, roughly mid June to October. Plaintiff started construction of certain segments of the TL-532 pipeline in June of 2007. Plaintiff plans to construct approximately 10 miles of the 48 miles

of pipeline during 2007. Plaintiff must be ready to construct the remainder of the pipeline, approximately 38 miles, across the remaining properties beginning in June of 2008 in order to complete all construction activities during the 2008 construction season. *Id.*, Ex. 1 (Mordan Decl. ¶¶ 6-8.)

Plaintiff has hired a pipeline contractor, and in accordance with the contract, Plaintiff must "provide its contractor with access to the entire right of way for the TL-532 pipeline across all affected properties by June 2008. If [Plaintiff] is unable to do so, then [Plaintiff] is likely to suffer negative financial ramifications for failing to comply with its contractual obligations." *Id.*, Ex. 1 (Mordan Decl. ¶ 11). Plaintiff cannot begin to construct the pipeline until Plaintiff acquires certain permanent right-of-way and temporary construction easements over Defendant Swineford's property which are necessary for constructing, maintaining, operating, altering, testing, replacing and repairing the pipeline. Defendant Swineford shall retain the right to use her property in any manner subject to the temporary and permanent easements which preclude Defendant Swineford from interfering with Plaintiff's use and enjoyment of rights. Plaintiff has been unable to obtain rights to the easements by contract. The parties are unable to agree on the compensation to be paid. Plaintiff requests the right for immediate possession of the easements for the purpose of constructing the pipeline and, pursuant to the authority granted to Plaintiff by section 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h), seeks to take by eminent domain those easements.

**APPLICABLE LAW**

The Natural Gas Act ("NGA"), 15 U.S.C. § 717f(h), grants gas companies the power of eminent domain. *East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808, 821 (4th Cir.), *cert.*

*denied*, 543 U.S. 978 (2004). A gas company must first obtain a certificate of public convenience and necessity from FERC. *Id.* at 818. The application to FERC must contain, among other information, (1) a description of the proposed pipeline project, (2) a statement of the facts showing why the project is required, and (3) the estimated beginning and completion date of the project. 15 U.S.C. § 717f(d); 18 C.F.R. § 157.6(b). Notice of the application is filed in the Federal Register, 18 C.F.R. § 157.9, public comment and protest is permitted, *id.* § 157.10, and FERC conducts a public hearing on the application, *id.* § 157.11. "As part of its evaluation FERC must also investigate the environmental consequences of the proposed project and issue an environmental impact statement." *East Tennessee,* 361 F.3d at 818; *see* 42 U.S.C. § 4332. After the evaluation, FERC issues a certificate if it finds that the proposed project "is or will be required by the present or future public convenience and necessity[.]" 15 U.S.C. § 717f(e). FERC also specifies a date for the completion of construction and the start of service. 18 C.F.R. § 157.20(b). The certificate may include any terms and conditions that FERC deems "required by the public convenience and necessity." *Id.* § 157.20. Once FERC has issued a certificate, the NGA empowers the certificate holder to exercise "the right of eminent domain" over any lands needed for the project. 15 U.S.C. § 717f(h).

The NGA provides that "[w]hen any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the United States. . . ." 15 U.S.C. § 717f(h). "A special rule, [Federal Rule of Civil Procedure] 71A, governs the procedure in a condemnation action." *East Tennessee*, 361 F.3d at 821. To commence the condemnation, the certificate holder must file a

complaint which sets forth the authority for the taking, the use for which the property is being taken, the identity of the property, and the interest to be acquired. Fed. R. Civ. P. 71A(c)(2). The action then proceeds in due course to the determination of just compensation for the owner of the land. Fed. R. Civ. P. 71A(h). After the determination and payment of just compensation, the condemning authority can take possession of the property. *East Tennessee*, 361 F.3d at 821.

In this case Plaintiff seeks possession before the determination and payment of compensation. The Constitution does not prohibit a condemnor from obtaining possession of property before compensation is paid, and neither the NGA nor Rule 71A addresses this issue. *East Tennessee*, 361 F.3d at 821-24. However, Rule 71A provides that the other Federal Rules of Civil Procedure apply to any matter not covered by Rule 71A. *See* Fed. R. Civ. P. 71A(a). As a result, Rule 65(a)'s provision for preliminary injunctions applies to condemnation cases. "[A] gas company with condemnation power under the NGA may apply under Rule 65(a) for a preliminary injunction awarding immediate possession." *East Tennessee*, 361 F.3d at 824. Thus, once the Court determines that the complainant has a right to take the easement, it may then consider a request for a preliminary injunction granting immediate possession. *Id.* at 825.

In deciding whether to grant a preliminary injunction, the Court should consider (1) the likelihood of irreparable harm to the plaintiff if the injunction is denied, (2) the likelihood of harm to the defendant if the injunction is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest. *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 193-96 (4th Cir. 1977). "[T]he [gas] company must demonstrate that it will suffer irreparable harm without immediate possession, and the company's harm must be weighed against any harm to the landowner." *East Tennessee*, 361 F.3d at 825 (citation omitted).

Finally, the gas company must provide security for reasonably adequate and certain payment of compensation. *Id.* at 826; *see also* Fed. R. Civ. P. 71A(j) ("[t]he plaintiff shall deposit with the court any money required by law as a condition to the exercise of the power of eminent domain[.]"). The Fourth Circuit concluded that these safeguards adequately protect landowners in cases where immediate possession may be granted. *East Tennessee*, 361 F.3d at 826.

**ANALYSIS**

*A. Plaintiff is authorized to condemn the property.*

The NGA provides that,

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located. . . .

15 U.S.C. § 717f(h).

It cannot be disputed that Plaintiff holds a certificate of public convenience and necessity from FERC. *See* Compl., Ex. 2 ("FERC Order"). Plaintiff offered Ms. Swineford a certain amount to purchase the easements and timber. When Ms. Swineford's son characterized the offer as too low, Plaintiff commissioned an appraisal of the easements. The appraiser valued the easements at a higher price and Plaintiff made a written offer consistent with this higher appraised value. A few months later, Plaintiff's agent verbally offered an amount higher than the appraised value and Ms. Swineford's son made a counter offer seeking twice the amount Plaintiff's agent had verbally suggested. Paper No. 27, Ex. 2 (Sommerville Decl. ¶¶ 8-22).

Based on Larry Sommerville's[7] unopposed declaration, it is evident Plaintiff and Ms. Swineford failed to agree upon compensation. Thus, in accordance with § 7(h) of the NGA, Plaintiff is entitled to condemn the property.

*B. Plaintiff is entitled to immediate possession.*

*1. The likelihood of irreparable harm to Plaintiff.*

Plaintiff's Project Manager, David L. Mordan, Jr., outlined the necessity of beginning the construction of the remainder of the pipeline across all other properties in June of 2008. Construction during the months of November through February is generally expensive and impractical due to inclement weather. Maryland's environmental restrictions further curtail the construction season by prohibiting "constructing across intermittent streams during the period from March 1 through June 15." Paper No. 27, Ex. 1 (Mordan Decl. ¶ 7). The combination of the limitations caused by weather and Maryland's environmental restrictions essentially prevents any construction during the winter and spring of 2009. "Constructing [a] certain portion of the pipeline in 2007 and being ready to begin construction on all remaining properties at the start of the pipeline construction season in June of 2008 will reduce both the risk and the impact of unusually severe weather." *Id.*, Ex. 1 (Mordan Decl. ¶ 10). Thus, for Plaintiff to comply with the FERC deadline of June 15, 2009, the remaining pipeline construction must occur during the summer and fall of 2008.

Second, as a general practice, pipeline construction is done in a linear fashion. "[I]f [Plaintiff] is unable to begin [p]ipeline construction prior to the determination of just

[7] An employee of Universal Field Services, Inc. ("Universal") who has been engaged in the business of right-of-way acquisitions for almost 30 years involving more than 100 projects. Plaintiff retained Universal to assist Plaintiff in providing land acquisition services as Plaintiff's agent for the Cove Point Expansion Project. Paper No. 27, Ex. 2 (Sommerville Decl. ¶¶ 1-2).

compensation, it will be forced to repeatedly mobilize, demobilize, and remobilize its contractors, equipment, and materials around each property for which compensation has not been finalized." *Id.*, Ex. 1 (Mordan Decl. ¶ 9). Such a process is not only inefficient but would dramatically increase construction cost, significantly delay construction and likely threaten Plaintiff's compliance with the FERC deadline. *Id.*

Third, Plaintiff has selected a pipeline contractor. In accordance with the contract, Plaintiff is required to provide the pipeline contractor with access to the right-of-way for the pipeline across all affected properties by June of 2008. "[I]f the [pipeline] contractor is unable to achieve the contractual completion dates as a result of delay due to lack of possession of the easements, there will be further financial ramifications for [Plaintiff]." *Id.*, Ex. 1 (Mordan Decl. ¶ 11).

Finally, separate hearings on compensation will be required for each of the many tracts of property Plaintiff seeks to condemn, and scheduling and conducting those hearings will take an extended period of time. *See East Tennessee*, 361 F.3d at 828. In *East Tennessee* the Fourth Circuit concluded that the district court's finding that "the Patriot Project would suffer 'undue delay' and that this delay would cause 'significant financial harm' both to [the East Tennessee Natural Gas Company] and some of its putative customers" was sufficient to show a likelihood of irreparable harm if immediate possession was not granted, *i.e.*, without a preliminary injunction. *Id.* at 828-29. In issuing the certificates of public convenience and necessity, FERC mandated that the construction of the facilities shall be completed within three years or by June of 2009. *See* FERC Order, at 73 (¶ H). This deadline underscores, without immediate possession of the easements, the significant undue expense and delay set forth in Plaintiff's

evidence. The Court thus finds there is a likelihood of irreparable harm to Plaintiff if immediate possession is not granted.

*2. The likelihood of harm to the landowner.*

Bruce M. Swinford, on behalf of his mother, submitted a letter in response to Plaintiff's motion. *See* Paper No. 30. By way of background, on April 11, 2005, Bruce M. Swinford and Ms. Swineford entered into an Agreement of Sale whereby they agreed to sell their adjoining properties to Pulte Homes for nineteen million eight hundred thirty-two thousand six hundred dollars ($19,832,600.00). Pulte Homes characterizes Plaintiff's proposed pipeline as a "title defect" under paragraph 2.3 of the Agreement of Sale. That provision states, in pertinent part,

> In the event the Buyer shall ascertain on or before Closing the title to the Property is subject to Title Defects not caused by or resulting from Seller's actions, then, in such event, Seller, at Seller's expense shall take reasonable efforts to remove such Title Defects. If notwithstanding the reasonable efforts of Seller, Seller shall be unable to remedy all such Title Defects upon or before a Closing Buyer may, at its sole option, either (i) declare this Agreement terminated and obtain a refund of the Deposit or (ii) proceed with such Closing without a reduction in the Purchase Price.

Paper No. 31, Ex. 1, at 8.[8]

Mr. Swinford views Plaintiff's proposed easements as jeopardizing his and his mother's contract with Pulte Homes. If this contract is terminated because of the "title defect," *i.e.*, the installation of the pipeline, Mr. Swinford and his mother, Louise Swineford, will suffer damages at the full contract price. *See* Paper No. 30, at 1.

Plaintiff contends the financial harm Ms. Swineford will suffer is speculative. There are

[8] Paper No. 31 is Plaintiff's Reply which includes, as an exhibit, the contract between Pulte Homes and Louise Swineford and Bruce M. Swinford. When Plaintiff filed its Amended Reply, Plaintiff did not attach the contract as an exhibit.

a number of contingencies and thus no guarantee that the contract will close. Even if Pulte Homes terminates the contract due to a "title defect,"

> Defendant is not entitled to recover the contract price as just compensation for Plaintiff's condemnation of Easements. If that were the case, Defendant would in essence receive a double recovery — she would receive from Plaintiff the amount she would have received for the sale of the property, and she would still have the property which she could then contract to sale to another party.

Paper No. 32, at 5.

Mr. Swinford, on behalf of Ms. Swineford, does not expect to be compensated the contract price for the land and to keep possession of the land. Mr. Swinford however asks the Court to consider Pulte Homes' purchase price of $19,832,600.00 in determining the value and damages for Plaintiff's taking of the easements. *See* Paper No. 33.

Plaintiff is correct that other factors could prevent the contract from closing. The current slowdown in the real estate market and the unsettled nature of credit markets are possible factors. Under such circumstances, home builders may be less inclined to start a new development. Even if the unsettled markets were not an issue, Pulte Homes' development plans for Ms. Swineford's property are not finalized. "Other consequences may arise that are simply unforeseeable at this time; still others might surface at some point in the future as *changes to the development plans are inevitably made during the design and approval process*." Paper No. 30, at 3 (Letter from Fitzgerald to Swinford of 7/19/07, at 1) (emphasis added).

Pulte Homes initially feared Plaintiff's pipeline would significantly disrupt Pulte Homes' development plans for the property by requiring Pulte Homes to relocate the primary community thoroughfare intended to provide utility service and vehicular access to the community. This particular concern has been alleviated.

> Since we first learned about the condemnation litigation in May, with your consent, we have been in touch with Dominion Cove to discuss technical issues pertaining to the easement and to determine whether the new pipeline would require an overhaul of our current conceptual plan. Fortunately, Dominion Cove appears willing to permit road and utility crossings of its planned pipeline easement.
>
> That said, *the easement and the new pipeline will undoubtedly affect our development of the Property — but it will do so to an extent that we do not yet fully understand.*

*Id.* (emphasis added).

Mr. Sommerville's unopposed declaration chronicles Ms. Swineford's concerns regarding the impact of the pipeline. On April 5, 2006, Plaintiff's agent spoke with Ms. Swineford's son, who instructed Plaintiff's agent "that all communications regarding [Ms. Swineford's] property were to go through him and that his own property and [Ms. Swineford's] property was under contract to be purchased by a developer (the "Developer"). [Ms. Swineford's] son also informed [Plaintiff's] agent that he and [Ms. Swineford] were awaiting a preliminary subdivision plat from the Developer." Paper No. 27, Ex. 2 (Sommerville Decl. ¶ 7). On April 28, 2006, Plaintiff's agent delivered a written offer to purchase the easements from Ms. Swineford in the amount of $978.00 plus an additional $134.00 for timber. *Id.*, Ex. 2 (Sommerville Decl. ¶ 8). On May 1, 2006, Plaintiff's agent called and spoke with Ms. Swineford's son, who opined the offer was too low and failed to consider Ms. Swineford's contract to sell her property to the Developer. Plaintiff therefore commissioned Wayne MacDonald, an independent and licensed real estate appraiser, to appraise the easements. *Id.*, Ex. 2 (Sommerville Decl. ¶¶ 9-10).

Mr. MacDonald provided his appraisal of the easements on June 20, 2006. He concluded the easements, collectively, were worth $1,700.63. *Id.*, Ex. 2 (Sommerville Decl. ¶ 11). Two

days later, Plaintiff's agent mailed a written offer to Ms. Swineford stating Plaintiff's final offer for the easements is $1,700.63 plus $134.00 for timber, for a total of $1,834.63. A copy of Mr. MacDonald's appraisal was provided to Ms. Swineford and she was encouraged to contact him if she had any questions. *Id.,* Ex. 2 (Sommerville Decl. ¶ 12).

On August 5, 2006, Ms. Swineford's son informed Plaintiff's agent of his concern "that the impact of the pipeline would cause he and [Ms. Swineford] to lose potential lots on their properties and thus reduce the price owed them by the Developer under the contract." *Id.*, Ex. 2 (Sommerville Decl. ¶ 13). Ms. Swineford's son refused to identify the Developer or disclose the purchase price of the contract. On August 14, 2006, Plaintiff's counsel sent a letter to Ms. Swineford reasserting the amount of $1,834.63 ($1,700.63 for the easements and $134.00 for timber) as the final offer. Plaintiff's counsel encouraged Ms. Swineford to contact her with any questions. Two days later, Ms. Swineford's son called Plaintiff's agent indicating he would send the Developer's stipulations and a drawing. Ms. Swineford's son expressed displeasure at receiving a letter from Plaintiff's counsel. *Id.*, Ex. 2 (Sommerville Decl. ¶¶ 13-14).

Plaintiff's agent and Ms. Swineford's son continued to communicate throughout September and early October. Plaintiff's agent made one last attempt to reach an agreement on October 24, 2006. Plaintiff's agent orally increased the offer to purchase the easements to $5,000.00. Ms. Swineford's son made a counter offer of $10,431.00. The parties were unable to reach an agreement. *Id.*, Ex. 2 (Sommerville Decl. ¶¶ 16-22).

There is no dispute that Ms. Swineford's agreement to sell her land to Pulte Homes for development is hindered by the easements and the proposed pipeline. The likely harm to Ms. Swineford — with the worse case scenario being Pulte Homes terminating the agreement and

demanding a refund of the deposit — is too speculative to quantify. Ms. Swineford is stuck between the proverbial rock (Plaintiff) and a hard place (Pulte Homes).

The Court has, *sua sponte*, examined and compared the plat depicting the proposed pipeline for Ms. Swineford's property, *see* Complaint, Ex. 1, and the plat depicting the proposed pipeline for Mr. Swinford's property, *see* PJM-06-CV-2447, Complaint, Ex. 1. The proposed pipeline for Ms. Swineford's property, only 88 feet in length, would affect a minuscule area of land in one small corner of Ms. Swineford's property. In contrast, the proposed pipeline for Mr. Swinford's property, 1201 feet in length, covers a significantly larger portion of the property, cutting almost through the center of the property. In previous paragraphs the Court cited to and quoted from Pulte Homes' July 19, 2007 letter to Mr. Swinford. After reviewing and comparing the plats for Ms. Swineford's property and Mr. Swinford's property, the Court finds Pulte Homes' concerns about the impact of the easements and the pipeline are based on Mr. Swinford's property, ***not*** Ms. Swineford's property. Nevertheless, Pulte Homes has agreed to purchase *both properties* and if Pulte Homes terminates the Agreement of Sale because of Plaintiff's easement as to Mr. Swinford's property, the contract between Pulte Homes and Ms. Swineford is also terminated.

In authorizing the pipeline expansion project, FERC was aware that some landowners would be affected. FERC nonetheless determined "there should be *de minimis* economic impact on landowners since 75 percent of the new pipeline's length will parallel the existing Cove Point Pipeline and the remaining 25 percent of the new pipeline route will deviate from existing pipeline route in order to minimize the environmental and landowner impacts." FERC Order, at 51 (¶ 129). Although the new pipeline easement (TL-532) will parallel the existing pipeline

easement (TL-522) on Ms. Swineford's property and is only 88 feet in length, the economic impact, if Pulte Homes terminates the Agreement of Sale solely because of Plaintiff's pipeline, would be more than *de minimis*.

What is apparent from Mr. Sommerville's unopposed declaration is the dissatisfaction with the amount of compensation Plaintiff offered. "[T]he Constitution 'does not provide or require that compensation be paid in advance of the occupancy of the land to be taken. But the owner is entitled to reasonable, certain, and adequate provision for obtaining compensation before his occupancy is disturbed.'" *East Tennessee*, 361 F.3d at 824 (quoting *Cherokee Nation v. S. Kan. Ry. Co.*, 135 U.S. 641, 659 (1890)). Based on the evidence presented to this Court, the harm to Ms. Swineford is not irreparable but rather is compensable. That harm therefore is outweighed by Plaintiff's immediate need for the easements.

*3. Plaintiff will succeed on the merits.*

The Court has found that Plaintiff, having obtained a certificate of public convenience and necessity from FERC, is authorized to condemn the property. Plaintiff's success on the merits is established.

*4. The public interest.*

The Fourth Circuit has recognized the substantial public interest involved in the need for natural gas supply. *East Tennessee*, 361 F.3d at 830. Here, as in that case, FERC has evaluated the need and concluded the pipeline project is required by public convenience and necessity. *Id.* In this case, FERC explained how the project serves the public interest.

> Expansion of the Cove Point Pipeline facilities . . .will make available gas supplies which would otherwise be unavailable, providing shippers enhanced access to firm natural gas storage capabilities and to additional natural gas markets throughout the

> northern and eastern United States. By this proposal, new gas supplies will be delivered to where they are needed in the Mid-Atlantic and northeastern United States. The project will bring new gas supplies into the heart of the market area by providing new gas sources for the shippers on Dominion, Transco and Columbia pipeline systems, which serve most of the major eastern United States markets and where the demand for natural gas is growing. In addition, LNG is expected to play a vital role in meeting the increased demands for natural gas from all consuming sectors. The growing importance of LNG is evidenced by INGAA's[9] July 2004 study which found that a delay as short as two years in the construction[] of gas pipelines, storage facilities, and LNG import terminals will cost the United States gas consumers more than $200 billion.

FERC Order, at 50-51 (¶ 126).

To assure that these needs are timely met, FERC has ordered Plaintiff to complete the project by June 15, 2009. No evidence has been presented contradicting that the necessity of this project is to serve the public interest.

**CONCLUSION**

Defendant Louise Swineford failed to present any evidence, in accordance with Rule 56, which rebuts the declarations of Mr. Mordan and Mr. Sommerville. No genuine issue of material fact has been presented. Partial summary judgment in favor of Plaintiff and against the Defendant is appropriate. Plaintiff has the right to condemn the property and has shown that a preliminary injunction granting immediate possession should issue. An Order will be entered granting Plaintiff immediate possession of the easements as described in the Complaint. Immediate possession is contingent upon Plaintiff posting, with this Court, a bond in the amount of ***$10,431.00*** with corporate surety, representing Defendant Swineford's counter offer made on

[9] Interstate Natural Gas Association of America.

October 24, 2006.[10]

Date: September 19, 2007

/s/
Alexander Williams, Jr.
United States District Judge

[10] Since the harm to Defendant Swineford would be more than *de minimis* if Pulte Homes terminates the Agreement of Sale ***solely*** because of Plaintiff's pipeline, a bond in the amount of *$1,834.63*, as Plaintiff proposes, inadequately reflects damages if the Agreement of Sale is terminated. Even if Defendant Swineford sold the property to another buyer, there is no guarantee the subsequent buyer's offer would equal or exceed the amount Pulte Homes offered and Defendant Swineford accepted.